CHICKASAW COOPERAGE COMPANY *v*. McGRAW.

Opinion delivered May 17, 1920.

1. MASTER AND SERVANT—EVIDENCE OF CONDITION OF MACHINE AFTER ACCIDENT.—In an action for the death of an employee sustained while operating a ripsaw, where it was an issue whether the ripsaw was provided with a device known as a "divider," which was a part of the machine requiring time and trouble to remove, evidence that there was no divider on the machine two and a half hours after the accident was admissible to show condition at time of accident.

2. EVIDENCE—CONFLICT WITH PHYSICAL FACTS.—In an action for the death of one employed in operating a ripsaw, which at the time lacked a "divider," testimony that the divider served as a guard device *held* not necessarily in conflict with the physical facts.

3. MASTER AND SERVANT—ASSUMED RISK.—Where decedent was inexperienced in the use of a ripsaw, and the dangers of operating it were not explained to him, he did not, by operating the machine for a few hours, as matter of law, assume the risk of operating it without a divider; whether he did assume such risk being a question for the jury.

4. MASTER AND SERVANT — SAFE APPLIANCES — INSTRUCTION.—In an action for the death of one operating a ripsaw, an instruction that it was the master's duty to provide decedent with reasonably safe appliances such as would be provided· by ordinarily prudent persons under the same circumstances, *held* not objectionable as making the master a guarantor of the servant's safety.

Appeal from Jackson Circuit Court; *Dene H. Coleman*, Judge; affirmed.

*Stayton & Stayton* and *A. P. Patton,* for appellant.

1. The motion for continuance should have been granted. 67 Ark. 144.

2. It was error to permit the witness, Gossett, to be asked and answer questions as to the condition of the ripsaw after the accident and as to whether the divider was in the machine at the time. 82 Ark. 561. It was also error to allow plaintiff to prove that appellant repaired the edger after the accident. Such proof is incompetent. 70 Ark. 183; 78 *Id.* 147; 79 *Id.* 388; 108 *Id.* 489.

3. The court erred in giving instructions 1, 2, 3, 4, 5, 6, 7 and 8. 105 Ark. 210; 46 *Id.* 567; 35 *Id.* 602; 44 *Id.* 529; 56 *Id.* 221; 105 *Id.* 434.

4. A verdict based on evidence which conflicts with the physical facts will be set aside. 79 Ark. 621; 14 Enc. of Ev., p. 129; 123 Ark. 436; 84 Ark. 555; 116 *Id.* 60; 79 *Id.* 437; 109 *Id.* 206. See, also, 179 U. S. 658; 90 S. W. 977; 103 Va. 64; 123 Ark. 134.

*L. L. Campbell,* for appellee.

1. There was no error in the admission of evidence. 4 Labatt on Master and Servant (2 ed.) 4821; 48 Ark. 460; 89 *Id.* 331; 110 *Id.* 194; 118 *Id.* 61. See, also, 95 Ark. 310; 54 *Id.* 25; 75 *Id.* 251; 86 *Id.* 145; 58 *Id.* 125.

2. The instructions were correct. 80 Ark. 260; 59 *Id.* 465; 81 *Id.* 591; 123 *Id.* 119; 98 *Id.* 227; 78 *Id.* 374; 93 *Id.* 564; 78 *Id.* 374; 90 *Id.* 476; *Ib.* 407; 91 *Id.* 102; 92 *Id.* 102; 98 *Id.* 211.

3. The evidence fully sustains the verdict. The deceased followed orders and was operating the machine, and was injured because of the negligence of the defendant.

HUMPHREYS, J. Appellee, administratrix of the estate of J. W. McGraw, deceased, instituted suit in the Jackson Circuit Court, against appellant, a corporation, operating a stave mill at Algoa, Arkansas, for $30,000 damages on account of injury and resulting death of deceased while operating a rip saw in said mill, due to the

alleged negligence of appellant in failing to provide a divider at the rear of said saw. Five thousand dollars of said amount was claimed as damages to the estate, on account of pain and suffering endured by the deceased, and $25,000 was claimed for the benefit of appellee, as widow, and her infant child. The complaint contained other allegations of negligence, but the issue of negligence was narrowed by the evidence to the alleged failure of appellant to provide a divider at the rear of the saw.

Appellant filed an answer, denying all the material allegations of the complaint, and pleading assumed risk and contributory negligence as further defenses.

The cause was submitted to the jury upon the pleadings, evidence and instructions of the court, which resulted in a verdict and judgment of $10,000 against appellant for the benefit of the widow and child, and $2,500 for the benefit of the estate. From that judgment an appeal has been duly prosecuted to this court.

Prior to the submission of the cause, appellant filed a motion for a continuance, the overruling of which is urged as ground for reversal. The cause was tried in Newport on September 25. On the 8th day of September, after the issues had been joined and the deposition of Doctor Lutterloh taken, appellee filed an amended complaint, paragraphing the causes of action so as to claim $25,000 damages for the benefit of the widow and child, and $2,500 for the benefit of the estate; and specifically alleging that the negligence consisted in failure to provide a divider at the rear of the saw. A copy of the amended complaint was served upon attorneys for appellant before the trial. The contention is made that the amended complaint set up an additional cause of action on account of pain and suffering, which matter was not touched upon in Doctor Lutterloh's deposition. Damages were claimed in the original complaint for the negligent act of appellant and for the pain and suffering endured by the deceased. The nature of the action was not materially changed in the amended complaint. Certainly, no sur-

prise resulted to appellant on account of the slight change made in the original complaint. The court, therefore, did not abuse its discretion in overruling the motion for continuance.

The facts, pertinent to a determination of the questions involved in this appeal, are as follows: The deceased husband of appellee, J. W. McGraw, twenty-seven years of age and reasonably intelligent, was an employee of appellant in his lifetime, engaged, until the morning of the injury, in operating an equalizer saw at its stave mill. An equalizer saw consists of two circular saws set about thirty-four inches apart on a level table, through which bolts are pushed and ends sawed off crosswise the grain, so as to equalize their length. There was nothing to fly back and hit the operator of the equalizer saw, and the operation thereof was not regarded as dangerous. On May 5, 1919, Tom Rogers, foreman of the mill, ordered J. W. McGraw, who was inexperienced in the operation of a rip saw, to operate it instead of the equalizer saw he had been operating. An accurate description of the rip saw, and its operation, appears in the condensed statement of facts in appellee's brief, which is as follows: "A table of stout timbers was built and securely fastened in such a manner that the top of the table stood at an angle of about forty-five degrees. The highest point being at the front where the operator stood, the top sloping backward. The object of this evidently being to cause the slab or refuse timber to slide off and away from the saw. About the center of the table a groove was cut in which revolved the circular saw some fifteen inches in diameter, and to operate the saw it was necessary for the operator to stand in front or a little to one side of the saw. He would pass the timber through the saw, holding the merchantable part, and the tailings or slabs passing on to the rear end being caught by the man placed there for that purpose, who would remove the slabs from time to time from where they would naturally fall. Two safety devices were usually and ordinarily

provided by persons acting with ordinary care in the operation of such saws, one of these devices consisting of a heavy board securely fastened over the top of the saw, and the other device was a strong and tough metal piece several inches long, commonly called a "divider," securely fastened at the rear of the saw in an upright position and as near to it as possible."

The evidence disclosed that the saw revolved very rapidly toward the operator, and that the cover, or hood, was to keep the heading, or pieces thereof, from being thrown backward with force toward the operator. The evidence is in conflict as to the purposes of the divider. Appellant's evidence tended to show that its only use was to spread the timber being sawed so that it would not pinch the saw and fly up against the hood. Appellee's evidence tended to show that, in addition to preventing the timber from pinching the saw and flying up, the divider also prevented slabs or refuse pieces of heading, left on the table after being sawed off, from coming in contact with the rear teeth of the saw and being hurled backward toward the operator. One witness expressed the usefulness of the divider as a guard by saying that, with a divider properly placed, it was possible, but improbable, that a slab would catch in the teeth of the saw. The saw rig shook when in operation, which jolting process might cause any loose pieces, left on the table, to come in contact with the rear teeth of the saw, unless prevented by the divider from doing so.

Appellee's evidence tended to show that it was dangerous to run a rip saw of this character without a divider, because it served as a guard to prevent slabs from getting into the saw, and from being hurled backward toward the operator; also, that an inexperienced person would know nothing about the danger of operating a rip saw without a divider.

There is also a conflict in the evidence as to whether a divider was in place at the time the injury was inflicted—appellant's witnesses testifying that a divider was in place, and appellee's that it was not.

One of appellee's witnesses, R. H. Gossett, testified that he observed the rip saw at 7 o'clock a. m., and again at 1 o'clock p. m., on the day the casualty occurred; that the rear guard, or divider, was not on it at either time. The appellant objected and saved exceptions to the admission of the evidence as to the condition of the saw at 1 o'clock p. m. about two and a half hours after the injury.

J. W. McGraw had operated the saw about three hours at the time he was injured, being injured at 10:30 a. m. He was standing in front and a little to the side of the machine, feeding it, when a slab was caught in the saw, which had been run through it and hurled backward, striking him in the lower part of the stomach and rupturing the bowels, thus causing peritonitis from which he died late on the night of May 7, 1919, after an operation had been performed on him. During his illness, he suffered great pain.

It is insisted that the court erred in admitting the evidence of Tom P. Snyder, to the effect that, two and a half hours after the accident, the machine was in the same condition as before the accident. A divider is a strong metal piece, several inches long, securely fastened in the rear, near the saw, in an upright position. According to the evidence, it was a necessary stationary part of the machine. It was something that would require time and effort to remove. If it had been a part easily removable, such a piece as could be lifted out without time or trouble, there would be reason in excluding the evidence showing the condition of the machine after the casualty. We think the presence or absence of a stationary part of a machine a short time after a casualty has happened would be evidence from which a reasonable presumption might be drawn as to the condition of the machine at the time of the casualty. This court said, in the case of *Little Rock Railway Co.* v. *Eubanks,* 48 Ark. 460, that, "It is often impracticable to adduce evidence on the condition of the track at the precise moment the casualty occurred. It is enough to prove such a state of facts shortly before or

after as will induce a reasonable presumption that the condition was unchanged.'' Under this rule, we think the evidence was admissible and the court did not err in admitting it.

It is insisted that the testimony in behalf of appellee, to the effect that the divider served as a guard device to prevent slabs from coming in contact with the saw is contrary to the physical facts, and, therefore, insufficient to sustain the verdict. The argument is made that the divider, being below the saw, loose slabs would have to pass beyond the saw before the divider could intervene between them and the saw, and, having passed beyond the saw, any jolting process would move the slab downward from the saw, instead of upward toward the saw on a floor such as this machine had, which was built at an angle of forty-five degrees. This is correct as to any slab which had entirely passed beyond the saw. Of course, any jolting process would not jolt a slab uphill toward the saw so that a divider would prevent it from coming in contact with the rear teeth thereof. This is not true, however, in reference to slabs which had partially passed the saw. Such slabs could jolt sideways toward the saw in their downward course and be prevented from coming in contact with the rear teeth of the saw by first coming in contact with the divider. It will be remembered the divider was a little thicker or wider than the saw and its proper place as near to the saw as possible. Being very near to, and a little wider than, the saw, it is readily seen how a loose slab jolted by and toward the saw might first strike the divider and be prevented from touching the saw. The testimony in this particular, therefore, did not necessarily conflict with the physical facts.

It is also contended that, if it be assumed that a divider was a necessary safeguard on such a machine, its absence was necessarily apparent to an operator of ordinary intelligence like appellant, and for that reason he assumed the risk incident to operating it without the divider. There would be much in this contention, had the

deceased been experienced in the use or mechanism of the machine. On the contrary, it was shown that the deceased was inexperienced in the use of a rip saw, and there was nothing in the record to show that he had any knowledge of its mechanism. He had never operated such a saw until the morning of the injury, and then only for two and a half hours before the injury occurred. Neither the mechanism of the machine, nor the inherent dangers and hazards incident to operating it, were explained to him. If a divider was not on the machine when deceased began to operate it, as appellant's testimony tended to show, then the deceased could not have assumed the risk incident to the operation without a divider, unless it had been shown he knew a divider was a necessary part of the machine and that its absence entailed additional hazard. The fact that he had been working around this and other mills for quite a while is not conclusive evidence that he had information concerning the necessary parts of a rip saw and the dangers incident to operating it without some part in place. There is positive evidence in the record to the effect that an inexperienced person would know nothing about the danger of operating a rip saw without a divider. The question of assumed risk was clearly one of fact for the jury, under the evidence, and the court did not err in so treating it.

It is insisted that appellee's request No. 2, given by the court, made the appellant a guarantor of the safety of the machine furnished, whereas it was its duty, under the law, to only use reasonable care to furnish a reasonably safe machine. We do not think the instruction susceptible to such a construction. The instruction does say that it was the duty of appellant, through its foreman, to provide the deceased with reasonably safe appliances, but adds that they must be such appliances as would be provided by ordinarily prudent persons under the same circumstances. This clearly indicates that the court meant, and we think the jury must have understood, that reasonable care only should have been used in providing a safe machine.

The objections and exceptions to other instructions are quite numerous and a discussion of them all would add great length to this opinion. Suffice it to say that we have carefully read them and considered them in their application to the evidence in this case and find that they correctly submitted the law governing the relationship of master and servant to the jury. After a careful examination we find no inherent errors in any of the instructions given, and that every phase of the case was covered by the instructions.

No error appearing, the judgment is affirmed.